14-295
Bricklayers v. Moulton Masonry

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2014

(Argued: January 12, 2015      Decided: February 26, 2015)

Docket No. 14-295

_____

BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 2, ALBANY, NEW YORK PENSION FUND, BY ITS ADMINISTRATOR, STEPHEN J. O'SICK; BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 2, ALBANY, NEW YORK HEALTH BENEFIT FUND, BY ITS ADMINISTRATOR, STEPHEN J. O'SICK; BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 2 ANNUITY FUND, BY ITS ADMINISTRATOR, STEPHEN J. O'SICK; BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 2, ALBANY, NEW YORK EDUCATION & TRAINING FUND, BY ITS TRUSTEES, ROBERT MANTELLO, PASQUALE TIRINO, LUKE RENNA, MICHAEL SUPRENANT, J.D. GILBERT, THOMAS MARINELLO, TODD HELFRICH AND LAURA REGAN; BRICKLAYERS AND TROWEL TRADES INTERNATIONAL PENSION FUND, BY DAVID STUPAR, EXECUTIVE DIRECTOR; BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 2, ALBANY, NEW YORK; AFLCIO, BY ROBERT MANTELLO, PRESIDENT,

*Plaintiffs–Appellees*,

—v.—

MOULTON MASONRY & CONSTRUCTION, LLC AND DUANE E. MOULTON, INDIVIDUALLY AND AS AN OFFICER OF MOULTON MASONRY & CONSTRUCTION, LLC,

*Defendants–Appellants*,

_____

B e f o r e :

KATZMANN, *Chief Judge*, KEARSE and RAGGI, *Circuit Judges*.

_____

Appeal from an amended judgment entered on January 16, 2014, by the United States District Court for the Northern District of New York (Hurd, *Judge*), denying defendants' motion to vacate a default previously entered against them and granting plaintiffs' motion for a default judgment for $662,135.21 against defendants. We conclude that the district court did not abuse its discretion by entering a default against the defendants. We further conclude that the district court did not abuse its discretion by entering a default judgment for $662,135.21 against Moulton Masonry & Construction, LLC. The district court did, however, err by entering a default judgment against Duane Moulton in his individual capacity which included liquidated damages as well as prejudgment interest and attorney's fees without articulating a justification for doing so. Accordingly, the decision of the district court is **AFFIRMED** in part; **VACATED** and **REMANDED** in part for further proceedings in accordance with this Opinion.

_____

JENNIFER A. CLARK (Daniel Kornfeld, *on the brief)*, Blitman & King LLP, Syracuse, NY, *for Plaintiffs–Appellees*.

Brian M. Quinn, Tabner, Ryan and Keniry, LLP, Albany, NY, *for Defendants–Appellants*.

_____

PER CURIAM:

Defendants-Appellants Moulton Masonry & Construction, LLC ("the corporate defendant"), and Duane E. Moulton ("the individual defendant"), appeal from an amended judgment entered on January 16, 2014 by the United States District Court for the Northern District of New York (Hurd, *J.*). In that order, the district court denied defendants' cross-motion to vacate the default entered on April 24, 2013, and granted plaintiffs' motion for a default judgment against both defendants for $662,135.21. This amount—for which the defendants were held jointly and severally liable—accounts for $451,300.52 in withheld fringe benefit contributions and deductions, $104,628.81 in prejudgment interest through October 21, 2013, $99,203.93 in liquidated damages, and $7,001.95 in attorney's fees and costs. We AFFIRM the denial of the defendants' motion to vacate the entry of default. We further AFFIRM the entry of a default judgment for $662,135.21 against the corporate defendant. Because the district court erred in calculating the damages entered against the individual defendant, however, we VACATE the default judgment entered against the individual defendant and REMAND for further proceedings in accordance with this Opinion.

3

## BACKGROUND

On July 13, 2009, Moulton Masonry & Construction, LLC, became a signatory to a collective bargaining agreement ("CBA") with the Bricklayers and Allied Craftworkers, Local 2 in Albany, New York ("the Union"). Among other obligations, the CBA required the corporate defendant to make contributions to the Union's Pension, Health Benefit, Annuity, and Education and Training Funds, as well as to the Bricklayers & Trowel Trades International Pension Fund ("the plaintiff funds") and to remit deductions from the Union workers' paychecks to those funds in accordance with stipulated schedules. The CBA also required the corporate defendant to submit to an audit of its books upon request and bound it to the Agreements and Declarations of the Trust as well as the Funds' Collection Policy. Duane Moulton, as the owner, officer, and shareholder of the corporate defendant, signed the CBA, reported the hours worked by union members to the plaintiff funds, and communicated with the auditor on the corporate defendant's behalf.

In the spring of 2012, the plaintiff funds initiated a payroll audit of the corporate defendant pursuant to the terms of the CBA. Moulton, however, failed to comply with repeated requests from the auditor. The plaintiff funds, therefore,

instituted the present action in federal court. Moulton and the corporate defendant received the Summons and Complaint on February 27, 2013 and March 5, 2013 respectively. On March 28, 2013, the plaintiff funds' counsel received a letter from Raeann C. Johnson, an attorney in Corinth, New York, requesting an extension of time to file an answer on behalf of the corporate defendant. Although the plaintiff funds agreed to this request on March 29, 2013, neither the individual nor the corporate defendant ever filed an answer or other responsive pleading. As a result of this failure, on April 24, 2013, the plaintiff funds requested that the court enter a default and served a copy of that request on the defendants. The district court clerk entered the default on that same day.

Though the defendants continued to ignore the judicial proceedings, Moulton did begin to work with the plaintiffs' auditor—although the exact extent of that participation is disputed by the parties. On May 2 and May 7, 2013, the plaintiffs advised the defendants of the audit's preliminary findings. The plaintiffs represent that they served their first discovery requests on June 5, 2013. On June 16, 2013, the defendants acknowledged receipt of the audit, and after several e-mails from the auditor requesting a response, Moulton replied with five proposed revisions on July 1, 2013. These revisions were specific to individual

5

employees and did not challenge the audit methodology or raise any concerns about "out of trade hours." On July 16, 2013, plaintiffs sent a letter to defendants reminding them of their discovery obligations. On August 19, 2013, the auditor issued his final report concluding that the corporate defendant owed the plaintiff funds $451,300.52.

On October 21, 2013, the plaintiff funds filed a motion for a default judgment. With it, they included affidavits from the fund administrators and business managers, the CBA, the Funds' Agreement and Declaration of Trust and Collections Policy, affidavits from their auditor and legal counsel, as well as a number of other documents justifying their request for damages. Defendants, through new counsel, responded on December 9, 2013 with a brief in opposition as well as a cross-motion to vacate the entry of default. Along with this filing, defendants included a six-page affidavit from Duane Moulton in which he attempted to explain his reasons for failing to participate in the litigation and challenged the methodology of the audit. The defendants, however, did not provide exhibits or documentary support for any of the statements made in this affidavit.

On January 2, 2014, the district court denied the defendants' motion to vacate the initial entry of default and granted the plaintiffs' motion for default judgment, awarding plaintiffs the full amount requested. This award included $451,300.52 in fringe benefit contributions and deductions, $104,628.81 in interest through October 21, 2013, $99,203.93 in liquidated damages, and $7,001.95 in attorney's fees and costs for a total award of $662,135.21. Defendants appealed.

## DISCUSSION

On appeal, the defendants challenge the district court decision on three grounds. First, they argue that the district court abused its discretion by denying the defendants' motion to vacate the original entry of default. Second, they argue that because questions of fact remained regarding liability, even accepting all allegations in the complaint as true, the district court abused its discretion by entering a default judgment against them. Third, they argue that the district court abused its discretion in calculating the default judgment damages assessed against them. We consider each challenge in turn.

I.  **ENTRY OF DEFAULT**

Under Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or

otherwise defend . . ., the clerk must enter the party's default." The entry of default is therefore not discretionary. That said, after such default is entered, "[t]he court may set aside an entry of default for *good cause*." Fed. R. Civ. P. 55(c) (emphasis added). "Because Rule 55(c) does not define the term 'good cause,' [the Second Circuit] ha[s] established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). These criteria are: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013). Relying upon these factors, the district court denied the defendants' motion to vacate the entry of default. This denial was not an abuse of the district court's discretion. *See Sony Corp. v Elm State Elec., Inc.*, 800 F. 2d 317, 320 (2d Cir. 1986).

First, the record demonstrates that defendants' default was willful. We have previously "interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless," but is instead "egregious and . . . not satisfactorily explained." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir.

8

1998).[1] Here, there is no dispute that Duane Moulton was aware of the legal action pending against him and his company based on his own admissions and the fact that the corporate defendant requested, through counsel, an extension of time to respond. Despite this knowledge, the defendants failed to file a responsive pleading for over nine months after the receipt of the summons and complaint, nearly eight months after the defendants were informed that the plaintiffs had requested an entry for default, and six months after they were served with discovery demands.

The defendants' primary justification for failing to file a responsive pleading, or participate in the litigation in any way, is that Moulton believed his participation in the audit was sufficient to discharge the defendants' duties. In his view, therefore, his failure to file a responsive pleading was a mere mistake and, therefore, excusable. A defendant's responsibility to file a responsive pleading, however, is not obviated by participating in efforts which could, in theory, later resolve the case. *See McNulty*, 137 F.3d at 734–35, 739 (settlement discussions that proved fruitless did not render a default unwillful); *cf.* 24 Am.

---

[1] Although *SEC v. McNulty* and several other cases cited in this opinion address the standard for vacating a default judgment under Rule 60(b) of the Federal Rules of Civil Procedure rather than the standard for voiding an entry of default under Rule 55(c), there is no practical difference on this appeal. *See American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996) (relying on Rule 55(c) criteria in Rule 60(b) decision).

Jur. *Proof of Facts* 2d 705 ("[T]he mere belief on the part of a defendant that matters will be settled [is not] a sufficient excuse for default."). Moreover, the defendants' request for an extension of time, through counsel, belies any inference that the failure to file a responsive pleading was a mere mistake.

While defendants' arguments, if credited, might give rise to an inference that their failure to file a responsive pleading was not in bad faith, "a finding of bad faith is [not] a necessary predicate to concluding that a defendant acted 'willfully.'" *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998) Rather, "it is sufficient" to conclude "that the defendant defaulted deliberately." *Id.* Defendants' conduct, in our view, indicates just such a clear pattern of willful and deliberate disregard for the litigation. *See Guggenheim Capital, LLC*, 722 F.3d at 455 (noting that where defendant "does not deny that he received the complaint, the court's orders, or the notice of default judgment" and "does not contend that his non-compliance was due to circumstances beyond his control," an inference of willful default is justified).

Second, the defendants fail to meet their burden of offering evidence sufficient to establish a complete defense. *See State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004). To the contrary, the

10

conclusory assertions in Moulton's affidavit, at most, merely offer excuses for failing to file a responsive pleading and dispute the amount of damages. Such statements are insufficient to compel vacatur of an entry of default. *See New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) ("We have previously held that a 'defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense.'") (quoting *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001)); *Sony Corp.*, 800 F.2d at 320–21 ("Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen the default must support its general denials with some underlying facts.").

We need not reach the question of whether the plaintiff would suffer prejudice as we are "persuaded that the default was willful and . . . [are] unpersuaded that the defaulting party has a meritorious defense." *McNulty*, 137 F.3d at 738. Accordingly, we hold that the district court did not abuse its discretion in denying the defendants' motion to vacate the entry of default.

## II. DEFAULT JUDGMENT: LIABILITY

A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment. Rather, the court

11

may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). We review the district court's decision for abuse of discretion. *Id.* at 131. Under this rubric, the district court concluded that the defendants were liable as a matter of law. We agree.

Although plaintiffs contend that the defendants waived any argument that they were not liable as a matter of law by failing to present any such argument below, we need not decide that issue because defendants' arguments on the point are wholly without merit. Under Section 515 of ERISA, 29 U.S.C. § 1145, any "employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." If such an employer fails to make the required contributions, the court "shall award the plan": "unpaid contributions," "interest," "liquidated damages provided for under the plan," "attorney's fees and costs," and "such other legal or equitable relief the court deems appropriate." *Id. at* § 1132(g)(2).

12

The allegations in the complaint when accepted as true, as we are required to do in deciding whether a default judgment is appropriate, establish the following facts: (1) the corporate defendant was bound to a Collective Bargaining Agreement with the Union; (2) it was obligated to remit contributions and deductions to the Funds and Union for hours worked by bricklayers, masons and plasterers in the Union's jurisdiction; and (3) it was bound by the Funds' Agreements and Declarations of Trust and Collections Policy. In addition, documentary evidence submitted by the plaintiffs, which the defendants did not contest, establishes that the corporate defendant failed to remit at least some contributions. These facts are sufficient to render the corporate defendant liable under ERISA. *See* 29 U.S.C. § 1145; *Finkel v. Romanowicz*, 577 F.3d 79, 85 (2d Cir. 2009).

The corporate defendant argues that it cannot be found liable as a matter of law under sections 1132 and 1145, because "[t]here was . . . no evidence that [it] received any monies from any union labor." Yet, a well-pleaded factual allegation in the complaint belies this claim. Plaintiffs alleged that the corporate defendant did, in fact, receive payment for union labor, and that allegation is accepted as true. *See* J.A. 16.

13

The district court never expressly articulated the legal theory under which it found Duane Moulton liable in his individual capacity. *See generally Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir. 1993) (holding that an individual cannot be held "liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager"); *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 387 (2d Cir. 1989). Here, because Moulton never entered into a collective bargaining agreement with the union, and because no other evidence suggested that the individual and corporate defendants are alter egos, Moulton could not have been found to be an "employer" under Section 515 of ERISA.

But Section 409 of ERISA, 29 U.S.C. § 1109, provides an independent basis for Moulton's liability in his individual capacity as a "fiduciary." A fiduciary, under ERISA is "someone who 'exercises any discretionary authority or discretionary control respecting management of [an ERISA benefit] plan *or* exercises any authority or control respecting management or disposition of its assets.'" *Finkel*, 577 F.3d at 85 (alteration and emphasis in the original) (quoting 29 U.S.C. § 1002(21)(A)(i)). A fiduciary that unlawfully withholds plan assets is "personally liable to make good to such plan any losses to the plan." 29 U.S.C. § 1109(a). Though not all corporate officers are fiduciaries under ERISA's

expansive definition of the term, the *Finkel* court indicated that where a complaint alleges that an individual is "responsibil[e] for determining which of the company's creditors would be paid or in what order' . . . or otherwise enjoyed authority or control over [] management," the individual is a fiduciary. *Finkel*, 577 F.3d at 86 (alteration in the original) (emphasis and internal citation omitted); *see also LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (noting that "Congress intended ERISA's definition of fiduciary 'to be broadly construed,'" and concluding that an individual who signed checks and decided when creditors were paid was a fiduciary).

Here, the factual allegations in the complaint, combined with uncontroverted documentary evidence submitted by plaintiffs, establish that Moulton was a fiduciary under ERISA and breached his fiduciary duty. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.3d 61, 65 (2d Cir. 1981) (explaining that plaintiff "is entitled to all reasonable inferences from the evidence offered" against the defaulting party). First, the complaint alleges that "Moulton . . . determined which creditors the [corporate defendant] would pay" and "exercised control over money due and owing to the Plaintiff Funds." J.A. 16. Second, the complaint and the evidence establish that Moulton failed to remit

15

employer contributions under his control, *see* J.A. 17, 19, 404, 421–23, which contributions were designated as plan assets under the trust documents, *see* J.A. 190, 257, 313; *see also In re Halpin*, 566 F.3d 286, 290 (2d Cir. 2009). These facts constitute a sufficient basis to affirm the district court's holding that the individual defendant was liable as an ERISA fiduciary.

## III. DEFAULT JUDGMENT: DAMAGES

"'[W]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (quoting *Greyhound Exitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). "Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that on the matter of damages 'the court may conduct such hearings or order such references as it deems necessary and proper . . . .' That rule allows but does not require the district judge to conduct a hearing." *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (emphasis omitted). The district court here did not hold a hearing on damages. Instead, it relied on plaintiffs' thorough submissions (including briefs, audits, and affidavits) and defendants' limited evidence in opposition to conclude that "plaintiffs have

16

established their entitlement to a judgment in the total amount requested." Special App. 5. We review this decision for abuse of discretion. *Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 233.

The defendants first challenge the damages entered against them for failing to account for "out of trade hours"—that is, hours worked for which contributions were not required. Though defendants assert that the contract envisions the possibility of "out of trade hours," their analysis ends there. The defendants' submissions fail to identify even a single piece of documentary evidence that out of trade hours were worked and, if so, how many and by whom. Absent such documentary evidence (or even an allegation that such evidence exists), there is no justification for reversing the district court, nor is there any justification for requiring a hearing on this issue.

The individual defendant also contends that the district court erroneously awarded liquidated damages, excessive interest, and attorney's fees against him. On this point, we agree with the individual defendant. While it is clear that under 29 U.S.C. § 1132, the corporate defendant is liable for unpaid contributions, interest, liquidated damages provided under the plan, attorney's fees and costs, and any other legal or equitable relief the court deems

17

appropriate, the same is not true for the individual defendant. As a fiduciary, the individual defendant can only be required under ERISA to "make good to [the] plan any losses to the plan resulting from [his] breach, and . . . [provide] such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a). The fiduciary's liability would certainly include the $451,300.52 in withheld fringe benefit contributions and deductions. Whether it would also include liquidated damages, prejudgment interest, and attorney's fees, however, is a different matter.

As we have previously explained, liquidated damages do not serve to make good to the plan any losses and do not "constitute 'appropriate equitable relief' as recognized by the common law of trusts." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 285 (2d Cir. 1992), *abrogated on other grounds by Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317 (2d Cir. 2003). Accordingly, the district court erred by awarding liquidated damages against the individual defendant.

Prejudgment interest, on the other hand, *can* constitute appropriate equitable or remedial relief under 29 U.S.C. § 1109(a). Yet, in order for the district court to grant such relief against a fiduciary in his individual capacity, it is required to articulate the reasons justifying such an award and the interest rate

chosen. *See Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 622–23 (2d Cir. 2006); *Diduck*, 974 F.2d at 286 ("One must look to the return on investments held by the plan to determine the appropriate interest rate to be applied under § 409."). As then-Judge Sotomayor explained in *Henry*, "[t]he issue of 'whether or not to award prejudgment interest [in ERISA cases] is ordinarily left to the discretion of the district court.' The court must, however, explain and articulate its reasons for any decision regarding prejudgment interest." 445 F.3d at 622–23 (internal citation omitted). Absent such findings, "'meaningful review is forestalled.'" *Id.* at 623 (quoting *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 140 (2d Cir. 2000)). Because the district court failed to engage in this analysis, we have no choice but to vacate and remand.

    Similarly, while the district court may award attorney's fees, *see* 29 U.S.C. 1132(g)(1), absent any specific analysis from the district court explaining why attorney's fees are justified against the individual defendant in this case, a meaningful review is forestalled. *See Henry*, 445 F.3d at 622. On remand, therefore, the district court is also directed to analyze whether attorney's fees are justified in this case.

## CONCLUSION

Accordingly, the district court's order denying defendants' motion to vacate the default entered against them is **AFFIRMED**. The district court's entry of a default judgment against the corporate defendant for $662,135.21 is also **AFFIRMED**. The default judgment against Moulton in his individual capacity is **VACATED** and the case is **REMANDED** to the district court for further proceedings in accordance with this Opinion.